Case number 1-2-2-3-5-0. Ray Anderson Bullock v. IndyMac Bank of America. Your services are going to be 15 minutes per side. Good morning. I have reserved three minutes. Okay, you may proceed. I think there are four issues before the court. And I know from being here before that what I think may be the four may not be the four that the court wants to focus on. So let me just lay out what I think the four are that need to be addressed. First of all, the legal context for dealing with relationships between lenders and borrowers. Second, the idea of whether under section 600.6023 Mrs. Bullard was a judgment debtor. Third, whether the second mortgage on December 4th superseded the first mortgage on December 1st. And fourth, whether Judge Stee properly looked into the idea of judicial estoppel sua sponte in the context of motion for summary judgment. In terms of the first one, there are three Michigan Court of Appeals decisions and one opinion from this court that lay out a framework which I think is important, which is in a sentence, we don't cut a break to lenders who are careless about the way that they put together loan documents. And that's come up in a context as simple as a lender who foreclosed on a $600,000 mortgage but only put down $60,000 in the foreclosure documents. The redemption price was therefore $60,000 and not $600,000. And the Michigan Court of Appeals said to the lender, too bad, you're in charge of your documents and if you put down $60,000 instead of $600,000, that's your problem. This court recently criticized a lender who had recorded a mortgage in the rural county in Michigan and said to that lender, basically pull out a map. If you want to be the lender and you're going to foreclose, it's your responsibility to make sure that those documents are right. Are you saying in this case it was a $60,000 redemption or are you just saying that's a parallel case? In the parallel case, and the courts held the lender's feet to the fire and said we're not going to give you a break. Everybody knew it was $600,000, the borrowers knew it was $600,000, but you put down $60,000. So if you foreclose and the redemption price is $60,000 and the borrowers come up with $60,000, they're going to buy off $540,000 worth of a mortgage for $60,000 and that's too bad for the lender. In this case, assuming that the mortgage wasn't valid, shouldn't this asset go into the bankruptcy court and be divvied up among the general creditors? That would be fine. And that's the short answer. The longer answer is... But your client didn't try to do that. On that point, I think it's important to distinguish. Mr. and Mrs. Bullard have separate legal interests. Mrs. Bullard borrowed the money in her own name. She was the one that filed the bankruptcy petition. She was the one that got the discharge. She's not your client. She is also my client because of the two of them having an interest in the house that they're trying to protect. Legally, though, they have separate interests. Mrs. Bullard has filed bankruptcy. If there's an issue of going back to her bankruptcy and reopening it or discussing what happens now that the house that she put on her list as being secured is actually an unsecured house, that's fine. Let's go back to the bankruptcy court and let the chips fall where they may in the bankruptcy court. Whatever happens, happens. And that would not be a bad result because then the bankruptcy court can take control over the bankruptcy issue, which is what happens when you go originally, you list a secured asset. It turns out that you litigate. It's an unsecured house. And now you go back to bankruptcy and say, I had an unsecured house, apparently. Let's figure out what happens in bankruptcy. She'd still owe the money to the bank. Right. That would be up to the bankruptcy court to determine at the end of the process whether the discharge that's already been granted to her stays with her. And it may and it may not. This is not the bankruptcy case, though. And so it would have been appropriate if Judge Stee was concerned about what Mrs. Bullard said or scheduled in the bankruptcy to allow that to play out in the bankruptcy, but not make the decision that she was precluded, and as Mr. Bullard also being precluded, from making an argument in Judge Stee's court. Remember, Mr. Bullard didn't file bankruptcy. So the judicial estoppel argument that Judge Stee came up with says to Mrs. Bullard, you took one path over here and you can't take this path over here. But he conflated the two and called my clients collectively the Bullards as though Mr. Bullard had done something in bankruptcy as well. He hadn't. He had not even filed bankruptcy. He never did actually have any ownership in this property, did he? What he has is a homestead interest under Michigan law as the spouse, as the husband of the owner of the house. That's up to $3,500 under the Michigan statute? What do you do with that $3,500? Let me walk you through 6023 because that's where this question applies. How much is the total amount? Is it $3,500 or is that void? If I have a claim against you and Judge, if you're married as well, your wife, for $100,000 and I'm a judgment creditor of yours and I want to foreclose on your homestead, there's a $3,500 exemption in the Michigan statute that says I'm limited to that. A mortgagee is in a separate category. What 6023 does is give bonus points basically to the mortgagee. And it says if you're the mortgagee, you bypass that exemption because that's the principle of a mortgage. There's no exemption. If I'm foreclosing on my mortgage, I don't suffer a $3,500 exemption. So what 6023 says is I get to go to the whole property because I'm the mortgagee if the mortgage is valid. And that's where the second part of 6023 comes in, which applies to this case, which says if I'm the mortgagee and I'm the one who loaned you money and I now want to foreclose, we have to determine if my mortgage is valid. It's not valid if we're missing a signature of a spouse. That's what 6023 says. So if I, as the bank, were now to just be in the position of a regular judgment creditor where I have $100,000 debt for some reason, contractual maybe, yes, then we go back to the exemption and if I'm trying to take your house, I suffer the $3,500 exemption as a straight-off judgment creditor but not a mortgagee. Mortgagees get the benefit of going to the entire house without an exemption. So the reason 6023 is important and central to the case is because it says right in the statute that a mortgage is not valid unless signed by both spouses. It doesn't say the husband or the wife. It says spouse. It doesn't say whether there's dollar or not dollar. It doesn't say whether there's courtesy or not courtesy. It just says not valid unless signed by both spouses. Judge Stee decided that Mrs. Bullard was not a judgment debtor because in the sense of not having a case having been brought against her where there was a judgment, he defined her out of being a judgment debtor. Let me explain to you why there's a problem with this. In Michigan, you can foreclose by advertisement or judicially. Section 6023 talks about the mortgage process. So if I were to foreclose judicially and I get a judgment, 6023 on its face applies. I have gone through judicial foreclosure. I am a judgment creditor of the Bullards and I get to foreclose. 6023 says my mortgage is valid if they both signed. Now what if I foreclose by advertisement? Under Judge Stee's logic, by foreclosing by advertisement, not judicially, I am now not a judgment creditor. Mrs. Bullard is now not a judgment debtor, which is a distinction the statute doesn't draw. The definition of judgment debtor in 6023 must apply to anybody in Mrs. Bullard's position who is on the wrong end of a foreclosure, whether the foreclosure happens judicially or by advertisement. She is a judgment debtor because she owes money through levy, execution, foreclosure, all of which are subsumed within the concept of judgment debtor. Judge Stee only went part of the way through the analysis and didn't, I don't think, realize the fundamental distinction he was drawing that the legislature never drew, that the Constitution never drew, which puts somebody who's the foreclosed upon party by advertisement outside the scope of 6023, but somebody who's foreclosed on judicially and everybody else who's got a judgment against them within the scope of 6023. So that concept of distinguishing somebody as a judgment debtor because they haven't gone through the court process is not found in the statute. Under your theory, now, that the bank is just out of luck and your client gets off with a windfall of, what, $600,000, right? And that's why I started with the context, Judge. Michigan courts and this court have basically said to lenders, you are at risk. If you don't do your paperwork right, yes, it may be that somebody with a, in this case that I was telling about, the Hollies, had a $600,000 mortgage. They were in default when the lender foreclosed. They foreclosed on 60 of it. They missed the decimal point, and the Michigan Court of Appeals said, I guess they get away with $540,000 that they don't have to repay because the lender didn't do it right. Now, you can say it's a windfall, and perhaps it is, but why benefit the lender when the lender's been sloppy? And let's keep in mind, the lender in this case, if we decide, if you decide that Michigan required dual signatures, this lender was not only sloppy, it intentionally went out of its way to create loan documents with only Mrs. Bowen's signature. Well, the first document there on the 1st of December, Brookwood signed it, right? He did. And they never set that aside. You're just saying set aside by virtue of the second mortgage. It superseded under Michigan law, and two reasons why. Does the second mortgage say that? The second one superseded it. Does it say that, or are you just saying that? Oh, I'm saying that, and that's because, in effect, the first one didn't even reflect the offer made. If you look at basic contract law, there has to be an offer and acceptance. The offer from the lender was, Mrs. Bullard, you sign. It was only this mobile closer, Akira Nelson, who wrote in at the last minute, Mr. Bullard's signature. That's not what her principal wanted her to do. Her principal wanted to make the offer to Mrs. Bullard, you sign. So when the principal got the loan documents back from its agent, they said to the agent, you screwed this up. It's only Mrs. Bullard that's supposed to sign. Go back and do it again. And she did. She signed D, and he signed 1. Yes. And effectively, what happened with the first mortgage is it was trashed. And physically, apparently it wasn't, but legally, it was not of any force and effect. In fact, when One West foreclosed, they foreclosed, the notice says we're foreclosing on the December 4th mortgage. The assignment they have is of the December 4th mortgage. All the documentation in the bankruptcy court said we are trying to get a stay against the stay, lift the stay as to the December 4th mortgage. Nothing One West ever did was to pursue the December 1st mortgage. So all of those acts together indicate that the first mortgage is superseded by the second. Thank you. Your initial time has expired, but you will have your rebuttal. My name is Leroy Asher. I represent the appellee, One West Bank. Seated with me at council table is also Mr. Timothy Myers, who is co-counsel for One West Bank. Judge Stee got this right. The district court found on three separate and independent bases that the Bullards were not entitled to a free house. He decided at first that both Mr. and Mrs. Bullard signed the December 1, 2006 mortgage and it was valid. He decided second that the December 4, 2006 mortgage that was signed only by Mrs. Bullard was also valid. And third, he found that even if those two mortgages weren't valid, which most respectfully they are, but even if they weren't, the concept of judicial estoppel prevents and precludes the Bullards from doing what they're attempting to do in this case. And therefore, their complaint was still subject to dismissal. This court can affirm if it agrees with Judge Stee on any one of those three grounds. Therefore, the Bullard's burden today is to convince you that Judge Stee was wrong, not on one of them, but on all three. And most respectfully, Judge Stee was right and correct on all three. Mr. Frank suggests that when this second mortgage was signed by only Ray Bullard, that that does away with the first mortgage at all, entirely. What about that? Is that true under Michigan law? It is not, and Judge Stee found that. Judge Stee and Judge Seiler, you asked Mr. Frank the right question. Is it because there's some law that is there, or is it because you're just saying that? And Mr. Frank's answer to you when I wrote it down was, I'm just saying that. And that, what Judge Stee found, we had the same debate in the district court. One less says that both mortgages are valid as the successor to IndyMac. The Bullards would obviously like to say, well, we'd like to pick and choose. But they come to this court with the burden of telling you on what basis and what law, what statute can you point to, what case can you point to, to make that point. And throughout the district court and to you today, Mr. Frank said, I'm just saying that. And most respectfully, that's not enough. In many cases, there are two mortgages signed. Sometimes it's done because you want a principal loan on a business entity, and then you have a second mortgage that's signed as to a person's residence and the like. In this case, there were two signed as the same property. But both of those mortgages are valid, and certainly as against the Bullards. And this is where the flaw in their argument is. The argument is, well, it's not recorded. The recording is important as to third parties, as to bona fide purchasers who would go and search the title records and not find an unrecorded mortgage. The Bullards don't stand in the shoes of a bona fide purchaser. They are not a good faith purchaser under the Michigan law for this purpose. They knew about both mortgages. I will tell you that their deposition testimony and the verified complaint they filed disclaimed it. It was only when Mrs. Nelson testified to it that they had their epiphany, and they remembered it. But now they remember it. Both of those mortgages are valid and enforceable, and certainly the December 1 as to Mr. Bullard should be enforced. What about this issue of Mr. Bullard having a homestead exemption in the property? I know he's not a listed owner, as I understand it, of the property. Correct. Is he entitled as a non-owner to have a homestead exemption? No, he's not. There are three reasons, and I think it's important to look at the statute and to go back and read the statute because I want to make sure that these three points are clear. I think it's in our briefs, but I want to come back to them. First, the statute 6023, and just for clarification purposes, at the time in 2010 the statute was labeled 60231H. As of January 1, 2013, the statute was amended and the lettering was re-lettered. It's now 1G. The first part of that statute I think is important to look at the purpose of the statute. It says a homestead right is an exemption of the land from sale. It's that homestead right. But the broader part of the statute, and just to take a moment of the Court's time, the kind of things that are covered, it says, the following property of the debtor and the debtor's dependents, and that's the language from the original statute. But the legislature, when it amended the statute in 2012, inserted the word judgment debtor, which is what Judge Stee also said. But the language in 2010 was the following property of the debtor and the debtor's dependents shall be exempt from levy upon any execution. The types of things they included were pictures, photographs, firearms, clothing. Believe it or not, in subpart D, 10 sheep, 2 cows, 5 swine, 100 hens, and 5 roosters. That'll probably be the only time you'll get to hear about hens and roosters. And then you come to sub G. And I'll go back and point out, as to the household goods and furniture, it's not exceeding $1,000, a limitation. As to the tools and implements used in the building and trade, which is subpart E, not exceeding $1,000. And then you come to the homestead. Most respectfully, Mr. Bullard is not a judgment debtor. He's not a debtor, period, if you believe Mr. Frank. And you don't need any further proof than me telling you this, but you can read Mr. Frank's brief. At page 29, he states, and this is to avoid the judicial estoppel argument, at page 29, Mr. Frank states in the first full paragraph, this case is fundamentally different. First, Mr. Bullard was not the debtor. So Judge Stee got this right on 6023, because the first prerequisite is that Mr. Bullard has to be the debtor. They've told you he's not. Therefore, Judge Stee was absolutely correct. The statute doesn't apply. That's the first reason. He's not a dependent either, is he? He's not. In fact, Mr. Bullard was, since 2006, Mrs. Bullard has stopped working. Whether or not she is his dependent, I don't know, but he's certainly not hers. He's the primary person out in the workforce right now. The second part of this, and this goes to what Mr. Frank told you about the statute or what he didn't tell you about the statute. I think you need, most respectfully, to go back and look and read the statute, because at page 17 of his brief, Mr. Frank starts out, quote, subsection 1, and then has three ellipses and then a dot, dot, dot, and leaves out the first two sentences of subpart H. He leaves those sentences out, and those sentences are critical, and I want to have the court, for a moment, focus on those. A homestead right applies in one of two situations. A homestead is for a situation of not exceeding 40 acres of land in the dwelling house and appurtenances on that homestead, or, in the alternative, at the option of the owner, a quantity of land not exceeding one lot being within the recorded plot, and then you come to the critical words. It says one lot being within the recorded town, plot, city, or village and the dwelling house and appurtenance on that land owned and occupied by any resident of this state not exceeding in value $3,500. The next sentence, which also Mr. Frank did not include in his brief, says, this exemption extends to any person owning and occupying the house on the land. Mr. Bullard certainly occupied it, but he never owned any part of it. He never owned the real estate. That part is absolutely factually undisputed. Mrs. Bullard was the only person entitled to this testimony, and we've quoted it to you in our briefs about that she didn't want the property to get into Mr. Bullard's children, and there was reasons why she did it this way. But she owned the real estate. But the cases Mr. Frank cited to on this point deal with the situation where the party claiming the exemption and being allowed the exemption owned the house, the physical structure. They had borrowed money to have a home constructed on that property. That isn't what happened here. There's been no testimony, and there's no evidence, and just because it's not true, Mrs. Bullard borrowed all the money to build this house. It was the loan made to her, not to Mr. Bullard. So he has never owned anything, and that is a prerequisite to getting to the next sentence, which is the sentence that Mr. Frank starts with. And on this point, I would ask the court to look at the case that is the first American v. City mortgage case, which was attached to Mr. Frank's brief. And this is the Michigan Court of Appeals. As it is, I believe it is an unpublished opinion from April of 2011. On the third page, what the Court of Appeals said, and this is exactly the problem here, quoting, The problem with the focus on this language is that it ignores the initial premise of the statute and the constitutional provision that only homestead property that is, italics by the court, owned and occupied, end of the italics, is exempt. That's precisely what you have here. Mr. Frank jumps in at the fourth sentence of the paragraph. That's where his quote on page 17 starts, but he ignores the first three sentences, and then when you come to the sentence that he quotes, he says, that sentence reads, However, this exemption does not apply to any mortgage, and then it goes on. The this exemption is the exemption that was discussed in the first three sentences. He's trying to tell you that this is a whole different stand-alone right that they have, and most respectfully, when you go back and read the language of the statute, it isn't. The sentence that he quotes refers back to and references the first three sentences, and as the First American v. City Mortgage case tells us, you have to meet the first criteria. You have to have owned it, and Mr. Bullard never owned any of it. The third reason why this also does not apply in this matter goes to the amount, and I believe, Judge Seiler, you mentioned in one of your initial questions, Mr. Frank, the $3,500 limitation, and I'm going to again read from the statute. It reads, after the A, 40 acres, or B, 1 lot, it says, Owned and occupied by any resident of this state not exceeding in value $3,500. Michigan has a separate statute, which is 6027, 600-6027, that deals with homesteads greater than that. This statute doesn't apply. Judge Stee was absolutely right on three bases. It doesn't apply to the judgment debtor. It does apply to the judgment debtor, but Mr. Bullard isn't a judgment debtor, and then for these other bases. Now, I would like to, with a little time here, I'd like to talk about the judicial samples very briefly. Are you saying that this statute doesn't apply if the property is worth more than $3,500? Correct. Okay, is there a case on that? There's the statute that is 600-6027, which I do not have it for you, on the judicial estoppel. This case, Mr. Frank says, well, there's all of this other facts. These facts were very important to Judge Stee, and Judge Stee spent a lot of time with this case. He had us back for a status conference. He did a lot of work with the parties on this. But what the Bullards did was they said, in sworn and mindful of the fact, not that it changes anything, but mindful of the fact that they are attorneys, and I think for those of us that practice in this profession, I think that should be important. Judge Stee found that they made false statements. They filed a verified complaint that said that Mr. Bullard did not sign a mortgage. They said that Mr. Bullard did not sign any documents. He gave sworn testimony under oath in the deposition, and then in one of those moments that lawyers rarely get, I handed him a piece of paper across the deposition table. Is that your signature, sir? And there was this silence as he looked at this, and it was, oh my God. Judge Stee fully understood that. They said Mrs. Bullard, in paragraph 40 of their verified complaint, Mrs. Bullard did not sign a mortgage on December 4. Now they admit she did. They claimed that poor Mrs. Nelson forged and altered and defrauded them, the notary, in filing these documents. Then she testified, and they came back and said, oh no, we admit she was right. We were wrong. They made, they filed a 13-count complaint alleging TILA and RESPA violations and a whole variety of things. And then when the whole story fell apart, they dismissed the 12 of the 13. Mr. Bullard told a story about his driver's license, about how the driver's license that you have had to be from an earlier transaction. Then we pointed out the dates, and it was, oh, I must have made a mistake. I guess you got me there. Judge Stee understood all of these things. And for all of these reasons, although we believe that the December 1 mortgage was correct and valid, we believe that the December 4 mortgage is correct and valid, even if they weren't, Judge Stee is exactly right that judicial estoppel is most appropriate in this case in order to prevent the kind of abuses that's going on here. Thank you. Thank you, Mr. Asher. Without rushing too much, I want to discuss, I think, the three points Mr. Asher raised. First of all, whether the second mortgage superseded the first. He misquoted me. What I said in answer to Judge Seiler's question was the loan documents don't say that one superseded the next. I didn't say the law doesn't provide for superseding. And we've cited the law in our brief. Judge Stee, in his decision, missed our briefing. He says in his decision that we didn't brief the point. We briefed the point, and we briefed it here. Under Michigan law, the second document supersedes the first. The second point Mr. Asher made was about this homestead interest and the statute 6023. And the court really has to sit down with the statute and understand the context. In the 1908 Constitution, there was a provision that already said that a mortgage isn't valid unless the wife signs, because that's the way the laws were written in 1908. When the legislature in 1961 passed section 6023, it was under the 1908 Constitution. And all it did was take out the gender bias in the Constitution and replace it with legislative language that now said spouse. But the concept is the same, which is a mortgage is not valid unless the spouse signs. And again, the legislature didn't say husband or wife. It said spouse. Now, when you take a look at 6023, what you'll see is it can only apply in one situation. It applies to the situation of giving the mortgagee a better position than a regular judgment creditor because the mortgagee has the mortgage. That's the intent of 6023, which is consistent with the Constitution. So there's nothing inconsistent about applying it to this case to protect Mr. Bullard. He's not the judgment debtor. Mrs. Bullard is the judgment debtor. We've never argued otherwise. But the exemption kicks in, and the bypass kicks in, when the non-debtor spouse, the non-debtor spouse, Mr. Bullard, doesn't sign. That's what the statute says. There's no other way to read it. And if the court has a question about whether that is consistent with the Michigan Constitution, perhaps the court should certify the question to the Michigan Supreme Court under the Michigan Court Rule 7305B that would allow you to do that. Nobody requested that. Nobody did. But if the argument seems to be that the statute shouldn't be read the way it is legally to be read, the only way that they can get to that point is to say that it violates another statute of the Michigan Constitution, which, if that's the argument, and that's not what they presented to Judge Steeve, but if that's the argument, then I think the Michigan Supreme Court has to decide that. The last point I want to raise is just about judicial estoppel. Mr. Bullard didn't file bankruptcy. And Judge Steeve wasn't talking about clean hands, unclean hands. If there's unclean hands, the lender here violated the automatic stay. It sued Mrs. Bullard in this case after she'd filed bankruptcy and got a discharge. It sued her for fraud. It can't do that. So Judge Steeve wasn't balancing equities between anybody. He was looking at the elements of judicial estoppel as enunciated by the Sixth Circuit in white to match up those elements with the facts of the case. And what he missed is that Mr. Bullard didn't file bankruptcy, didn't make any consistent or inconsistent statements, and Mrs. Bullard, because of the time sequence, didn't make any inconsistent statements. And on that last point, we had filed a motion to expand the record, and I don't know how the court wanted to treat that. The court will handle that matter in due course. Okay, and that's on this point of judicial estoppel, to flush out that particular point of the timeline. Okay. All right, thank you. Thank you, counsel, for your arguments today. We appreciate them.